UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



September 24, 2018

Andrew N. Sindler
Law Offices of Andrew N Sindler LLC
PO Box 1107
Severna Park, MD 21146

Benjamin B. Prevas
Special Assistant United States Attorney
Social Security Administration
6401 Security Blvd Rm 617
Baltimore, MD 21235

Stacey W. Harris
Social Security Administration
6401 Security Blvd. Rm 617
Baltimore, MD 21235

Subject: *Chestnut v. Berryhill*[1]
Civil No.: 8:17-cv-01696-GLS

Dear Counsel:

Pending before this Court, by the parties' consent, are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. (ECF Nos. 11, 12). The Court must uphold the Social Security Administration ("SSA")'s decision if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* Upon review of the pleadings and the record, the Court finds that no hearing is necessary. L.R. 105.6. For the reasons set forth below, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED. I am affirming the SSA's judgment.

### I.    BACKGROUND

Plaintiff filed a Title II Application for Disability Insurance Benefits on December 24, 2015, alleging that disability began October 1, 2014. (Tr. 17). This claim was denied on March 17, 2016 and upon reconsideration, denied again on May 26, 2016. *Id.* Plaintiff's request for a

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

hearing was granted and the hearing was conducted on December 20, 2016 by Administrative Law Judge ("ALJ") Andrew Emerson. *Id.* The ALJ found that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act on February 9, 2017. (Tr. 34). The Appeals Council denied Plaintiff's request for review on April 20, 2017. (Tr. 1–3). Pursuant to 42 U.S.C. § 405(g), Plaintiff has a right of review after the final decision of the Commissioner of Social Security made after a hearing to which she was a party and thus filed her claim in this Court on June 20, 2017. (ECF No. 1). The ALJ's opinion became the final and reviewable decision of the SSA. (Tr. 2).

The issue before this Court is not whether the Plaintiff is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence. *Craig*, 76 F.3d at 589; 42 U.S.C. § 405(g). Plaintiff argues first that the ALJ erred in his evaluation of the medical evidence, his assessment of the medical impairment listings, Plaintiff's Residual Function Capacity ("RFC"), exertional and non-exertional limitations, and Plaintiff's credibility. (ECF No. 11 at 1). Second, Plaintiff argues that the ALJ did not meaningfully consider the vocational evidence and erred in his evaluation of the vocational expert opinion evidence. *Id.* Defendant counters that there is no genuine issue as to any material fact and that the SSA's final decision is supported by substantial evidence. (ECF No. 12 at 1).

## II. DISCUSSION

### A. Medical Evidence and Listings

Plaintiff contends that the determination that the Plaintiff is not disabled is unsupported by substantial evidence because the ALJ failed to note certain medical impairments as severe at Step 2. (ECF No. 11 at 9). If all of the evidence, including medical records and opinions, that the ALJ receives is consistent, then there is sufficient evidence for the ALJ to determine whether a claimant is disabled. 20 C.F.R. § 404.1520b(a). The ALJ will then go through the five-step sequential evaluation process ("SEP") to determine whether a claimant is disabled. 20 C.F.R. 404.1520(a)(4). If the ALJ finds that a claimant is disabled or not disabled at a step, he can make his determination or decision and not go on to the next step. *Id.* If the ALJ cannot find that claimant is disabled or not disabled at a step, he will proceed to the next step. *Id.* At step 2 of the SEP, the ALJ will determine the medical severity of the claimant's impairment(s). 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the at least twelve month long duration requirement in § 404.1509, or a combination of impairments that are severe and meet the duration requirement, the ALJ will find that a claimant is not disabled. *Id.; see* 20 C.F.R. § 404.1509. The regulations define an impairment as "not severe" when it is unlikely to result in disability, even when the claimant's age, education, and experience are taken into account. 20 C.F.R. § 404.1521.

### 1. The ALJ's Findings

#### a. Mental Impairments

When a claimant alleges mental impairments, the ALJ will look at the "paragraph B criteria" to assess how an alleged mental disorder limits the claimant's functioning. 20 C.F.R. Part 404 Subpart P. App. 1, Part A2 § 12.00 2(b). The criteria are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself ("paragraph B criteria). *Id.* To satisfy the paragraph B criteria, claimant's mental disorder(s) must result in an "extreme" limitation of one, or "marked" limitation of two of the four areas of mental functioning. *Id.* Although the claimant asserts otherwise, the ALJ properly considered the paragraph B criteria. (Tr. 21).

First, the ALJ found that Plaintiff's ability to understand, remember, and apply information was only mildly limited, as Plaintiff's medical records and testimony show that although she suffered from PTSD related symptoms including depression, anxiety, and insomnia, the Plaintiff was taking medication and participating in counseling. (Tr. 21, 74–75). Second, the ALJ also found that the Plaintiff's ability to take an online MBA course indicated that she was only somewhat limited in her ability to understand, remember, and apply information. (Tr. 21, 71). Third, the ALJ found that Plaintiff had only a mild limitation in the area of interacting with others, as evidenced by her trips out of state to meet her significant other and attend events, and her socialization with childhood and military friends (Tr. 21–22, 54–58). Fourth, the ALJ found that Plaintiff experienced a mild limitation in concentrating, persisting, or maintaining pace due to Plaintiff's mental status examinations indicating that her memory and concentration are generally within normal limits, and that she is able to perform daily tasks and chores, drive, shop, and attend school. (Tr. 22, 47–50, 53–58). Finally, the ALJ found that Plaintiff has no limitation in adapting or managing herself, as shown by Plaintiff's testimony regarding her general schedule. (Tr. 22, 68–71).

#### b. Physical Impairments

For physical impairments, Plaintiff argues that the ALJ failed to find substantial evidence that the Plaintiff's idiopathic peripheral autonomic tenosynovitis, connective tissue disorder, and labral tear were not severe. (ECF No. 11 at 9). Without objective medical evidence of a medically determinable impairment that could cause the symptom(s) a claimant alleged, an ALJ may conclude that a claimant was not limited by a severe impairment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (finding that without objective medical evidence of a medically determinable impairment that could cause the symptoms that the Plaintiff suffers in her hands, the ALJ properly concluded that Johnson was not limited by a severe hand impairment). In this case, the ALJ found that the Plaintiff's idiopathic peripheral autonomic tenosynovitis was not a medically determinable impairment because it was not definitively diagnosed. (Tr. 20–21). The ALJ also found that a conclusion that the connective tissue disorder was a medically determinable impairment was not supported by any medical evidence. *Id.*

Citing to the medical records documented in the exhibits provided, the ALJ found that the claimant's mental impairments, her post-traumatic stress disorder ("PTSD") related depression and anxiety, and physical impairments, idiopathic peripheral autonomic tenosynovitis and connective tissue disorder, and labral tear in the hip, do not cause more than a minimal limitation on her ability to engage in work related activities. (Tr. 19–22).

### 2. Plaintiff's Arguments

Plaintiff argues that the very medical evidence cited by the ALJ shows "a definitive diagnosis" of idiopathic peripheral autonomic tenosynovitis because the claimant's symptoms were consistent with the clinical signs of that disease. (ECF No. 11 at 9). However, the Plaintiff fails to assert how this impairment significantly limits her physical ability to do basic work activities. Per the regulations, if a claimant does "not have any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities, [the ALJ] will find that [a claimant] do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c). For the connective tissue disorder, the ALJ found that there was no suspicion of the disease despite a prior workup. (Tr. 28).

The ALJ found that the claim that the labral tear is a severe impairment was not supported by the medical record. (Tr. 21, 66–68). Plaintiff states that the ALJ mischaracterized the term "simple" when used in the medical record and then argues that that term was more likely to be a medical term to describe the complexity of the tear, rather than the degree of severity of limitation as it pertained to a disability claim. (ECF No. at 9, 10 n.2). However, the ALJ found that the medical record suggests that the tear would heal within twelve months, and the doctors that examined the Plaintiff's hip seem to suggest that surgery for it was not necessary. (Tr. 21, 66–67). I find that substantial evidence supports the ALJ's conclusion that the labral tear posed no more than a minimal limitation on Plaintiff's ability to do basic work related tasks. (Tr. 21). The lack of objective medical evidence for the impairments supports the ALJ's conclusions that they are not severe.

Plaintiff next avers that the ALJ failed to properly consider the relevant medical impairment listings at Step Three. (ECF No. 11 at 11). Specifically, Plaintiff asserts that the ALJ failed to explain why Listings 1.02 for Major Dysfunction of a Joint and/or Listing 1.04 for Disorders of the Spine were not met, even after listing multiple symptoms that are consistent with the requirements of those listings. *Id.* Defendant counters that the ALJ properly found that Plaintiff did not met the two listings; in particular, Plaintiff's imaging studies and physical examinations did not support a claim of disabling impairment. (ECF No. 12 at 13). Listing 1.02 is "characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," with the "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." 20 C.F.R. Part 404, Subpart P, App. 1, Part A2 § 1.02.

In this case, the ALJ found that Plaintiff's imaging studies revealed normal findings and that several of the doctors that examined the Plaintiff indicated that she did not need a wheelchair to ambulate. (Tr. 24, 59–61). Further, the ALJ found that, per the medical record, Plaintiff did not need ambulatory aids and could independently ambulate from distances ranging from forty feet to 500 feet, precluding her from meeting the requirements of Listing 1.02. (Tr. 28–29). I find that the ALJ supported his conclusion that Plaintiff did not meet the requirements of Listing 1.02 with substantial evidence.

To meet Listing 1.04, a claimant must have a "disorder of the spine . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, [with either] evidence of nerve root compression . . . spinal arachnoiditis, … or Lumbar spinal stenosis . . . , established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. § 404, Subpart P, App. 1, Part A1 § 1.04. The ALJ found that Plaintiff stated she had lower and mid back pain but, based on the medical record, was capable of ambulating effectively, had normal gait and station, and normal strength. (Tr. 24–25, 28–29). I find that the ALJ therefore had substantial evidence to conclude that Plaintiff's impairments could reasonably be expected to produce her alleged symptoms, but only to the extent that they are consistent with the objective medical evidence in the record. (Tr. 26).

### B. RFC Determination

When assessing a claimant's RFC, the ALJ will consider all of the claimant's medically determinable impairments of which he is aware, including any medically determinable impairments that are not "severe." 20 C.F.R. 416.925(a)(2). The ALJ will consider any inconsistencies in the evidence and the extent to which there are any conflicts between a claimant's statements and the rest of the evidence. 20 C.F.R. 404.1529(c)(4). A claimant's symptoms will be determined to diminish her capacity for basic work activities to the extent that they are consistent with the objective medical evidence and other evidence. *Id.* An ALJ's RFC determination should include a "narrative discussion describing how the evidence supports each conclusion citing specific medical facts . . . and nonmedical evidence." SSR 96–8p, 1996 WL 374184 (July 2, 1996). The ALJ should build "an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, No. 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017).

#### 1. Plaintiff's Arguments

Plaintiff argues that ALJ improperly discounted Plaintiff's statements on her pain and symptoms. (ECF No. 11 at 14–17). "Subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment that could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591. Plaintiff's statements could be characterized as inconsistent with the record, as the ALJ contrasted Plaintiff's statements with the objective medical evidence, finding that the Plaintiff's subjective statements often conflicted with the objective evidence in the medical

records and thus. (Tr. 24–31). The ALJ found that Plaintiff was not very credible, particularly in her claims over need for ambulatory aids. (Tr. 30–31).

### 2. The ALJ's Findings

Here, the ALJ properly established a narrative, citing the medical records, statements and opinions of the examining doctors, and considered Plaintiff's daily activities and statements in his determination of Plaintiff's RFC. (Tr. 23–31). In this Circuit, the opinion of a Plaintiff's treating physician is given controlling weight and may be disregarded only if there is persuasive contradictory evidence. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590 (stating that if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight). The ALJ compared Plaintiff's claims and each treating physician's opinions to the objective medical evidence throughout the record and noted when these were consistent or inconsistent with the other. (Tr. 23–31). For example, the ALJ noted that Dr. April's "apparent opinion indicating that that claimant needed a wheelchair or crutches . . . rested on the claimant's subjective allegations rather than the objective evidence appearing throughout the record, which supports a finding that the claimant does not need assistive devices." (Tr. 25).

The ALJ found that Plaintiff had the RFC to perform "light work," with certain limitations on standing and walking. (Tr. 23). "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A job qualifies as "light work" when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* Because the ALJ credited physicians' opinions that Plaintiff had some difficulty walking and standing, the RFC included the limitation of "standing and walking two hours in an eight-hour workday." (Tr. 23).

I find that the ALJ's conclusion is supported by substantial evidence with regard to Plaintiff's RFC and exertional and non–exertional limitations.

### C. Vocational Expert's Testimony

The SSA can "show that the claimant is not disabled only if the vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan v. Barnhart*, 142 Fed. App'x 716, 720–21 (4th Cir. 2005); *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (holding that in order for a vocational expert's opinion to be relevant, it must be based upon a consideration of all other evidence in the record and be in response to proper hypothetical questions which fairly set out all of claimant's impairments). In making disability determinations, the ALJ must rely primarily on the Dictionary of Occupational Titles ("DOT") for information about the requirements of work in the national economy, and must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and

the DOT, before relying on testimony by the vocational expert. SSR 00-4P, 2000 WL 1898704, (Dec. 4, 2000).

Plaintiff asserts that the ALJ asked improper hypothetical questions to the vocational expert and that the vocational expert's testimony was inconsistent with the DOT. (ECF No. 11 at 24). In response to the hypotheticals posed by the ALJ, the vocational expert testified that jobs at the light and sedentary RFC levels existed in the national economy that an individual like the Plaintiff could perform. (Tr. 32–33, 79–86). A hypothetical is unimpeachable if it adequately reflects the RFC for which the ALJ had sufficient evidence. *See Johnson*, 434 F.3d at 659.

Here, the ALJ had sufficient evidence to support his finding of the Plaintiff's RFC and thus his hypotheticals were proper. Like this Court held in *Reynolds v. Astrue*, where the "crucial issue" was whether the ALJ asked the vocational expert "to consider all of Plaintiff's RFC abilities and limitations, and the [vocational expert] opined that there are jobs that Plaintiff could perform," here the issue is similarly whether the ALJ properly instructed the vocational expert to consider all of Plaintiff's abilities and limitations. *Reynolds v. Astrue*, Civ. No. SKG-11-559, 2012 WL 1107649, at *21 (D. Md. Mar. 30, 2012). In this case, the ALJ properly instructed the vocational expert to consider whether an individual with the abilities and limitations of Plaintiff could perform any jobs in the national or regional economy. (Tr. 80–85). In the ALJ's hypotheticals, he instructed the vocational expert to consider whether an individual with the same abilities and physical and mental limitations of Plaintiff could perform work. (Tr. 80–83) (asking the vocational expert about light and sedentary work). The ALJ found that the vocational expert's testimony was consistent with the DOT and thus there was substantial evidence for his conclusion.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 11), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 12), is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely,

/s/

The Honorable Gina L. Simms
United States Magistrate Judge